601 A.2d 921

**David J. KEESEY, an Incompetent by George L. KEESEY, Jr., his guardian, Appellant,**

**v.**

**LONGWOOD VOLUNTEER FIRE COMPANY, INC. and Edward B. Walton, Delaware County and Chester County, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Nov. 22, 1991.

Decided Jan. 6, 1992.

Order Jan. 6, 1992
as Amended Jan. 9, 1992.

468

Stephen P. Chawaya and Marcy B. Tanker, for appellant.

David L. White, for appellee Delaware County.

Ralph B. D'Iorio, for appellee Chester County.

Before CRAIG, President Judge, McGINLEY, J., and LORD, Senior Judge.

LORD, Senior Judge.

This is an appeal by the plaintiff in a motor vehicle accident case from the grant of a motion for summary judgment in favor of the defendants, the Counties of Delaware and Chester.

■ This court and the trial court are required to take all of the facts in a light most favorable to the plaintiff. Those facts are as follows:

On July 20, 1986, at about 1:50 a.m., David J. Keesey was operating his automobile in a northerly direction on Route 202 and entered its intersection with Route 1, in Delaware

County, Pennsylvania, with a green light. Defendant, Edward B. Walton, was operating a fire engine owned by Longwood Volunteer Fire Company, Inc., a Chester County Fire Company. The fire engine was traveling in an easterly direction on Route 1 and entered its intersection with Route 202 when the traffic signals were red for traffic eastbound on Route 1. The fire engine collided with the automobile operated by plaintiff/appellant, David J. Keesey, causing him severe bodily injuries, including permanent brain damage.

The fire engine was on its way to a Delaware County fire located in Ridley Creek State Park, having been dispatched by the Chester County Fire Board in response to an assistance request from the Delaware County Fire Board. The Chester County Fire Board was in radio contact with the Longwood fire engine as it proceeded to the fire scene and had the ability to instantly communicate with the fire engine at all times. The Chester County Fire Board had the ability to monitor communications between the fire chief at the scene of the fire and the Delaware County Fire Board.

The fire chief at the scene of the fire, a chief of a Delaware County company, was able to communicate by radio with the Delaware County Fire Board and the other Delaware County fire trucks but not with the Longwood fire truck involved in the accident. In order to get a message to the Longwood fire engine, it was necessary for the Chester County Fire Board to contact that truck by radio. The Chester County Fire Board received messages from the Delaware County Fire Board by phone. After the Delaware County Fire Board made the request for assistance, but before the collision occurred, the fire chief in charge at the scene of the fire had issued a "slow down" order. This order was not communicated to Walton, the driver of the engine, by the Delaware County Fire Board or the Chester County Fire Board.

There is evidence that, had the order been communicated, the fire engine would not have been proceeding to the fire at a high rate of speed. Moreover, if the "slow down"

order had been communicated, the fire engine would have stopped at the red light at Route 202. Thus, it is assumed, there was sufficient evidence from which the jury could have found that the failure to communicate the chief's "slow down" order was a causative factor in the accident.

■ Before the entry of summary judgment, plaintiff entered into a settlement and release agreement with Edward B. Walton and Longwood Volunteer Fire Company.

The trial court in its opinion correctly held that since the counties could only be held responsible for the acts of Walton if an agency relationship existed between Walton and the counties, the settlement and release extinguishes the vicarious liability of the counties for the acts of Walton. *Mamalis v. Atlas Van Lines, Inc.*, 522 Pa. 214, 560 A.2d 1380 (1989). Indeed, Keesey admits as much in his brief where he states:

> By reason of the agency relationship between Walton and the Counties, the release executed in favor of Edward Walton and Longwood Volunteer Fire Company extinguishes the vicarious liability of Chester County and Delaware County. (Appellant's brief, p. 32)

But, Keesey contends, "[t]he release does not … extinguish the liability of Chester County and Delaware County for their separate and independent acts of negligence." (Appellant's brief, p. 32.)

This brings us to the crucial question in this case which is: Can the counties be held liable for the negligence of their employee who failed to communicate the "slow down" order to Walton?

Or, more particularly, does the assumed causative negligence of the dispatcher fall within the motor vehicle exception to Section 8542(b)(1) of the Judicial Code, 42 Pa.C.S. § 8542(b)(1), conferring immunity on political subdivisions of the Commonwealth. That section provides in its pertinent part:

§ 8542(b). Acts which may impose liability—The following *acts by a local agency or any of its employees* may result in the imposition of liability on a local agency:

(1) Vehicle Liability.—The *operation of any motor vehicle in the possession or control of the local agency.* As used in this paragraph, "motor vehicle" means any vehicle which is self propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

(Emphasis added.)

■■■ At the outset, we are met with the counties' argument that since Judge Levy in ruling on preliminary objections held the original complaint did not state a cause of action against the counties, and plaintiff did not appeal that decision, he is precluded from appealing now. However, that argument fails because Judge Levy gave the plaintiff the right to amend his complaint (of which right the plaintiff availed himself). Therefore, the order was not a final order and could not have been appealed without a certification. A final order is one that ends the litigation or precludes a party from presenting a case. Sustaining preliminary objections with the right to amend is not such an order. *Department of Transportation v. Rollins Outdoor Advertising Co., Inc.,* 76 Pa.Commonwealth Ct. 554, 464 A.2d 653 (1983). Hence, we consider Keesey's arguments on the merits.

■■■ Much of Keesey's brief is devoted to an argument that the counties were in "control" of the vehicle through the so-called dispatchers. That may well be true, but the statute must be construed strictly, and the statute requires "operation" of the vehicle.

This court has consistently held that there must be facts to show that agents of the local agency *operated* the vehicle in order for this immunity exception to apply.

In *Burnatoski v. Butler Ambulance Service Company,* 130 Pa.Commonwealth Ct. 264, 567 A.2d 1121 (1989), this Court said:

The vehicle exception to governmental immunity applies only to situations where an employee of a local agency actually operates the vehicle in question. *Capuzzi v. Heller,* 125 Pa.Commonwealth Ct. 678, 558 A.2d 596 (1989). The Supreme Court has held that the term "operation" is to be strictly construed to mean actually putting a vehicle in motion. *Love v. City of Philadelphia,* 518 Pa. 370, 543 A.2d 531 (1988).

This Court has rejected the argument that mere control of a motor vehicle by a local agency is sufficient to trigger the motor vehicle exception to governmental immunity. *Burkey v. Borough of Auburn,* 100 Pa.Commonwealth Ct. 110, 514 A.2d 273 (1986). In order for the exception enumerated in Section 8542(b)(1) to be applicable, there must be some facts indicating that the vehicle was operated by a government official.

*Id.,* 130 Pa.Commonwealth Ct. at 269, 567 A.2d at 1124.

In *Burkey by Burkey v. Borough of Auburn,* 100 Pa.Commonwealth Ct. 110, 514 A.2d 273 (1986), this Court said:

The vehicle exception to governmental immunity applies only where the agent of the local agency actually *operates* the vehicle in question. (Emphasis in original.)

See also the decision of the Supreme Court in *Love v. City of Philadelphia,* 518 Pa. 370, 543 A.2d 531 (1988), where the Court said in interpreting the same statute:

Black's Law Dictionary defines the word "operate" as follows:

This word, when used with relation to automobiles, signifies a personal act in working the mechanism of the automobile ... (citations omitted) Black's further defines "operation" as: the process of operating or mode of action. Black's Law Dictionary, p. 984 (rev.5th ed. 1979).

Similar definitions are found in the Oxford Dictionary. See Oxford English Dictionary, Volume VII, p. 144 (1933). The American Heritage Dictionary defines "operation" as "[t]o run or control the functioning of: operate a machine"; and defines "operation" as "[t]he state of being

operative or functioning in operation." See The American Heritage Dictionary of the English Language, p. 920 (7th ed. 1971).

The only person operating this vehicle was Walton; the dispatchers were not actually operating the vehicle. Since this opinion already points out the release does not permit a recovery against the counties for Walton's operation of the vehicle, his operation cannot be used to impose liability on the counties for the failure of dispatchers to communicate.

We of course do not decide that one may not be tortiously injured by the separate and independent failure of dispatchers to communicate proper orders. The unfortunate facts of this case forcibly demonstrate otherwise. However, as was emphasized in *Love*, we are confined to the issue of whether a political subdivision is immunized from suit when one is so injured. As Mr. Justice McDermott stated in that case, "[t]he legislature, for reasons of policy, reasons we are not entitled to dilute for sympathy or outrage at specific instances of blatant tort, has decided such an immunity does exist.... sometimes leaving dreadful injuries, negligently inflicted, uncompensated." *Id.*, 518 Pa. at 375, 543 A.2d at 533. Here, as in *Love*, we must abide by that decision and are thus constrained to deny the appeal.

### ORDER

The Delaware County Common Pleas Court order at No. 86–14434, dated February 4, 1991, is hereby affirmed.